**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(KANSAS CITY DOCKET)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 08-20013-01-CM-JPO |
| | ) | |
| CECIL A. BROOKS, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C)

The United States of America, by Tristram W. Hunt, Assistant U.S. Attorney, and

Cecil A. Brooks, the defendant, personally and by and through his attorneys, John

O'Connor and P.J. O'Connor, hereby enter into the following plea agreement

pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1.      **Defendant's Guilty Plea.**      If the Court permits, the defendant agrees to

plead guilty to Count 1 of the Third Superseding Indictment, to wit: conspiracy to

knowingly and intentionally possess with intent to distribute and the distribution of

50 grams or more of a mixture or substance containing a detectable amount of

cocaine base "crack cocaine," a controlled substance, within 1000 feet of the real

property comprising a public secondary school, to-wit: Topeka High School, 800

West 10th Street, Topeka, Kansas, in violation of Title 21, United States Code,

Sections 841(a)(1), 841(b)(1)(A)(iii), 846, 860(a) and Title 18, United States Code,

Section 2. By entering into this plea agreement, the defendant admits to knowingly

committing this offense, and to being guilty of the offense.   The defendant

understands that the maximum sentence which may be imposed as to Count 1 of

the Third Superseding Indictment to which the defendant has agreed to plead guilty is not less than 10 years, not more than life  imprisonment, not more than a $4,000,000 fine, not less than 5 years not more than 10 years of supervised release, and a $100 mandatory special assessment fee.  If the defendant has a prior drug felony conviction, then the penalties are not less than 20 years, not more than life imprisonment, not more than a $8,000,000 fine, not less than 10 years of supervised release, and a $100 mandatory special assessment fee.   If the defendant has two prior drug felony convictions, then the penalties are mandatory life imprisonment, not more than a $8,000,000 fine, not less than 10 years of supervised release, and a $100 mandatory special assessment fee.    The defendant further consents to the entry of a money judgment against him in the amount of $30,515.00.   The defendant acknowledges and agrees that this $30,515.00 figure represents a portion of the proceeds obtained as a result of the conduct charged in Count 1 of the Third Superseding Indictment.  In return for the defendant's plea of guilty to Count 1 of the Third Superseding Indictment, the government agrees to dismiss the remaining Count of the Third Superseding Indictment at sentencing.

2.      **Factual Basis for the Guilty Plea.**    The parties agree the facts constituting the offenses to which the defendant is pleading guilty are as follows:

1.      Between September 15, 2007, and January 16, 2008, Cecil A. Brooks (hereinafter DEFENDANT) maintained a residence located at 1942 North 24th Street, Kansas City, Kansas, which is located within 1000 feet of real property comprising a public elementary school, to-wit: New Chelsea Elementary School, 2500 Wood, Kansas City, Kansas, for the purpose of

2

storing, manufacturing and distributing cocaine and cocaine base "crack cocaine."

2.    Cocaine base "crack cocaine" that was manufactured or stored at 1942 North 24th Street, Kansas City, Kansas, was transported to various apartments in the Winstone Apartment Complex located at 800 SW Polk, Topeka, where the cocaine base "crack cocaine" was stored at and then distributed from, by DEFENDANT, Lemark D. Roberson (hereinafter Roberson), Luis Rivera-Cotto (hereinafter Rivera-Cotto), Cynthia Weixelman (hereinafter Weixelman), Gaylon Steele (hereinafter Steele), Ronda R. Barnett (hereinafter Barnett), Adam G. Newton (hereinafter Newton) and other unindicted co-conspirators. More than 50 grams of cocaine base "crack cocaine" was distributed during the course of the charged conspiracy and more than $30,515 in drug proceeds were derived during the course of the charged conspiracy.

3.    Cash drug proceeds were collected in Topeka by DEFENDANT and Roberson with most of the proceeds being returned to various locations in the Kansas City metropolitan area.

4.    The Topeka Police Department (TPD), the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA) began a joint investigation of the Brooks Drug Trafficking Organization (BDTO).

5.    On November 27th, 2007 a Kansas City Kansas Police Department confidential informant (CS#1125) advised that CS#1125 had sold crack cocaine for DEFENDANT off and on for years. CS#1125 advised that DEFENDANT was running a crack house out of an apartment in Topeka, Kansas, off of 8th Street. The apartment was located on the third floor at the end of the hall and the money and drugs were stored in an apartment down

3

the hall.  CS#1125 then named two subjects that sell out of the apartment complex. CS#1125 stated that DEFENDANT had a stash house located at 1942 N. 24th Street Kansas City, Kansas.  He/she said DEFENDANT also uses the house to cook/convert the powder cocaine into crack cocaine.

6.   On November 23, 2007, Newton advised the Topeka Police Department that DEFENDANT hit him on the head with a beer bottle thereby knocking him to the ground whereupon DEFENDANT  placed a hot clothes iron on his back burnt him with it.  Newton stated DEFENDANT believed that he was responsible for $1000 worth of crack cocaine being missing in Topeka, Kansas.  Newton also advised that DEFENDANT was running a crack house out an apartment in Topeka, Kansas, and had a stash house located at 1942 N. 24th Street Kansas City, Kansas.  Newton related that he had been selling "crack cocaine" he got from DEFENDANT from the apartment complex in Topeka.

7.   On January 3, 2008, a pole camera was placed in the vicinity of 24th Street in Kansas City, Kansas.  The camera was utilized to assist on surveillance of 1942 N. 24th Street Kansas City, Kansas.  Between January 3, 2008, and January 16, 2008, law enforcement officers monitoring the pole camera observed DEFENDANT entering and leaving the residence multiple times. DEFENDANT would use a key to open the front doors. Other persons were also observed entering and leaving the residence with DEFENDANT and at times these persons were seen accessing the house without him. Two of these individuals were identified as Unindicted Co-conspirator #3 (UCC#3) and  Unindicted Co-conspirator #4 (UCC#4).   UCC#3 was also observed using a key to access the house.

8.   On January 15, 2008, Kansas Bureau of Investigation Special Agent James

4

Carmack and FBI TFO Mike McCall conducted a trash pull at 1942 N. 24th Kansas City, Kansas.  Special Agent Carmack picked up the trash bag from the curb in front of 1942 N. 24th at approximately 0913 hours.  Special Agent Carmack transported the bag to the Kansas City Kansas Police Department (KCKPD) located at 700 Minnesota Kansas City, Kansas. Special Agent Carmack, DEA TFO Pam Bennett and FBI TFO Mike McCall went through the content of the trash bag and recovered the following items:

-3  Zip Loc bags containing residue, the gallon bag tested positive for cocaine. Item#  27133

-1  Sandwich bag containing a marijuana roach.  Item# 27134

-1 Sandwich bag containing white residue.  Item# 27135

-2 Razor blades with white residue.  Item# 27136

-6 Sandwich bags containing white residue.  Item# 27137

-7 Sandwich bags containing green leafy substance.  Item# 27138

-256 Sandwich bags with corners torn off.  Item# 27139

-3 Plastic/latex gloves.  Item# 27140

-4 Always Save brand sandwich boxes (150 count).  Item# 27141

-1 Time Warner Cable advertisement with the address 1942 N. 24th

-1 page from the Kansas City Star with the address 1942 N. 24th

-1 envelope from the KCKPD addressed  to UCC#2, 1942 N. 24th

-1  receipt from Ike C. Automotive


9.  TFO Mike McCall field tested the residue from one of the Zip-loc bags

(gallon), one razor blade and one sandwich bag.   All of these items tested positive for the presumptive presence of cocaine.  TFO Mike McCall field tested the roach containing vegetation and the test was positive for the presumptive presence of THC.  The listed property was placed in the KCKPD property room as evidence.

10.    On January 16th, 2008, at approximately 1240 hours, a search warrant issued by a Judge   Daniel Duncan of the Wyandotte County, Kansas, District Court, for 1942 N. 24th Kansas City, Kansas was executed.  TFO Mike McCall was assigned to the front perimeter of the residence while the KCKPD SWAT Unit made entry into the residence.  Once the residence was secured by the SWAT Unit, TFO Mike McCall entered and observed two subjects, one being the DEFENDANT and a female. KCKPD Officer Jay Doleshal advised that when he entered the house, he observed the DEFENDANT on the floor in the living room with his hand under the center of the couch.  After DEFENDANT was secured, Officer Doleshal looked under the couch and observed a Smith and Wesson handgun under the center of the couch.

11.    TFO Mike McCall asked the female if she would step outside the house in order to be questioned.  She agreed and TFO Bennett and TFO Mike McCall interviewed her.  The female advised that she moved from Hayti, Missouri to Kansas City, Kansas about three years prior.  She stated she moved into  a house with a relative of DEFENDANT' in the area of 32nd and State Avenue, Kansas City, Kansas.  She stated she lived with DEFENDANT' relative for

about one year and then moved into 1942 N. 24th Kansas City, Kansas. She said that she lived at 1942 N. 42nd for about six months and then moved to a different house in, Kansas City, Kansas, where she currently resided. The female advised that she did not have any knowledge about narcotics at 1942 N. 24th or the DEFENDANT being involved in narcotics trafficking. The interview was then ended.

12.    TFO Mike McCall was assigned as the evidence recovery officer. TFO Bennett Officer K. Kovac, Officer N. Doleshal and Officer R. Nunez assisted with searching the residence. Officer Wright took digital photos of the evidence located within the residence. The following property was recovered from the residence:

-(1) loaded Smith and Wesson Handgun (did not have a round chambered)

-(9) Live rounds

-(1) Magazine

- Item #27158: Clear baggie containing off white substance 0.9 grams

-(2) 357 rounds

-(4) 40 caliber rounds

-(30) 9mm rounds

-(1) Jar of Inositol Powder

-(1) Package of razor blades

-(3) Razor blades

7

- Item #27162 (1) black Triton scale (1) Silver digital scale

-Item #27163 (1) black scale with residue

-Item #27165 (2) black digital scales

-Item #27155 Clear baggie containing white substance 8.9 grams

-Item #27156 Clear baggie containing white substance 3.2 grams

-(1)  Red can of pepper spray

-(37) 45 Caliber rounds

-(1) Bullet proof vest

-(1) Wood box containing (78) 9mm rounds, (41) 44 caliber rounds, (50) 38 caliber rounds, (25) 22 caliber rounds, (3) assault rifle banana clips, (1) 45 caliber magazine

-Item #27158 Clear baggie containing off white substance 0.1 grams

- Item #27159 Clear baggie containing white residue

-Item #27160 Clear baggie containing residue, spoon with residue, and razor blade with residue

-Item #27161 (1) razor blade

- Item #27164 (120) sandwich bags with corners torn, (1) empty box of sandwich bags

-Item #27167 (1) Pyrex eight cup measuring cup

-Item #27168 (1) "Anchor four" measuring cup

- (1) Cricket cell phone, (3) Keys (one to 1942 N. 24th) recovered from the female

- (1) I-phone recovered from DEFENDANT

The property was transported to the Kansas City Kansas Police department,

8

tagged as evidence and was placed into the property room.

13.     Prior to searching residence, KBI Special Agent James Carmack and KCKPD
        Detective Greg Lawson transported DEFENDANT to the KCKPD and started to
        interview him.  TFO Mike McCall assisted with the interview.  TFO Mike McCall
        was told by Detective Lawson that DEFENDANT  had signed a KCKPD Advise
        Of Rights form.  The DEFENDANT then provided the following information:

        He advised that he had not sold or been involved with narcotics since the1990's.
        He said that during the 1990's he would purchase two to four ounces of cocaine
        at a time and sell ten to twenty dollar rocks of crack cocaine.  The DEFENDANT
        was asked if he had any involvement with the cooking or packaging of drugs at
        1942 N. 24th Kansas City, Kansas.  He advised that he was not involved but
        people come to the house and cut crack cocaine up and package it at the
        residence. He advised that Unindicted Co-conspirator #5 (UCC#5), Unindicted
        Co-conspirator #6 (UCC#6) and Unindicted Co-conspirator #7 (UCC#7) cut and
        package the crack at 1942 N. 24th.   The DEFENDANT advised that UCC#5
        would bring two ounces crack cocaine to the house to cut up. The DEFENDANT
        advised that about one month prior UCC#5 cut up two ounce of crack cocaine
        and packaged it at 1942 N. 24th. The DEFENDANT advised that UCC#5  did not
        come over that often.  He said UCC#5  lives with a  relative and when the
        relative is home he/she will not let him cook the cocaine so UCC#5 would come
        over to 1942 N. 24th cook the cocaine and  package the crack cocaine.  The

DEFENDANT advised that UCC#6 also would bring about two ounces of crack cocaine to the house to cut and package.  The  DEFENDANT advised that UCC#5 and UCC#7's supplier was a black male about 25 years of age that lived in Missouri and is known as "A.J."  The DEFENDANT advised that one time during the summer of 2007, UCC#5 sold crack cocaine to someone in front of 1942 N. 24th.  The DEFENDANT then told UCC#5 to not sell in front of his house because if the police kick the door in everything in the house was going to go on him (DEFENDANT).  The DEFENDANT advised that everybody had a key to 1942 N. 24th and that they bring girls to the house and play video games.

14.    A search of Wyandotte County, Kansas records revealed that 1942 N. 24th Street Kansas City, Kansas, was owned by DEFENDANT and his wife and that the residence is within 1000 feet of the real property comprising a public elementary school, specifically, New Chelsea Elementary School.

15.    While agents in Kansas City were focusing on 1942 N. 24th Street, Topeka police officers, utilizing a confidential informant (CI), were able to make a number of purchases of "crack cocaine" from individuals at the Winstone Apartment Complex located at 800 SW Polk, Topeka, Kansas, which is within1000 feet of the real property comprising a public secondary school, to-wit: Topeka High School, 800 West 10th Street, Topeka, Kansas.

16.    On December 19, 2007, the CI purchased cocaine base "crack cocaine" from Rivera-Cotto at the Winstone Apartment Complex located at 800 SW Polk, Topeka, Kansas.  The CI reported to officers that he/she had given a black male (later identified as Rivera-Cotto) the official funds for the "crack cocaine"

and that Rivera-Cotto had then gone to an apartment #38 on the third floor. The CI stated Rivera-Cotto then came back from the third floor with "crack cocaine" and gave it to him/her. Later, the CI was shown a picture of Rivera-Cotto and he/she positively identified him as the person who had sold him/her the "crack cocaine." The quantity of drugs Rivera-Cotto sold to the CI were tested by a chemist at the Kansas Bureau of Investigation and was determined to be cocaine base "crack cocaine."

17.     On January 16, 2008, the CI purchased cocaine base "crack cocaine" from Rivera-Cotto and Steele at the Winstone Apartment Complex located at 800 SW Polk, Topeka, Kansas. The CI initially met with Steele who then took him to apartment #17. Steele took the official funds and knocked on apartment #16 and made contact with Rivera-Cotto. Rivera-Cotto then took the official funds and went to apartment #38 (Roberson's apartment) and returned with the "crack cocaine" and gave it to the CI. The CI noted that the he recognized Rivera-Cotto as being the same person who had sold him/her drugs at the Winstone Apartment Complex on December 19, 2007. The quantity of drugs Rivera-Cotto and Steele sold to the CI were tested by a chemist at the Kansas Bureau of Investigation and were determined to be cocaine base "crack cocaine" with a net weight of .3 grams.

18.     On January 16, 2008, a coordinated series of search warrants were served at several apartments at the Winstone Apartment Complex located at 800 SW Polk, Topeka, Kansas. Cocaine base "crack cocaine," a firearm and drug paraphernalia were recovered during the execution of these warrants. Eight individually wrapped rocks of crack cocaine were recovered from inside the apartment #16, the apartment Rivera-Cotto was living in. Rivera-Cotto showed officers where the crack was located in the apartment. Drug paraphernalia was also seized as was at $20 bill (No. EJ50352072A) that had

11

been used by the CI to make the purchase from  Rivera-Cotto and Steele
earlier the same day.  Rivera-Cotto was arrested along with Roberson,
Weixelman and Steele.  The quantity of crack cocaine Rivera-Cotto
possessed in the apartment was tested by a chemist at the Kansas Bureau of
Investigation and were determined to be cocaine base "crack cocaine" with a
net weight of 2.09 grams.


19.     On the same day Rivera-Cotto was arrested at the Winstone Apartment
        Complex, co-defendant Wiexelman was arrested and then interviewed.  She
        stated that she had purchased "crack cocaine" from the "Puerto Rican
        brothers" in apartment #16.   She stated that the "Puerto Rican brothers" are
        Luis (Rivera-Cotto) and an unindicted co-conspirator (UCC).  Weixelman said
        that she had purchased from the UCC an additional 6-7 times.  Weixelman
        stated that she usually purchased $20 "crack cocaine" rocks from Luis and the
        UCC.


20.     After his arrest, officers interviewed Rivera-Cotto.  Rivera-Cotto was read a
        Miranda warning.  Rivera-Cotto stated that he understood his rights and would
        be willing to speak to officers without an attorney present. He stated that his
        cousin, UCC, lives in apartment #16 and he hangs out with his cousin. Rivera-
        Cotto stated that he has only hung around UCC's apartment for about two
        weeks.  During this time, Rivera-Cotto said he has seen UCC make
        approximately 100 crack cocaine sales.  Rivera-Cotto said that the majority of
        the crack cocaine sales were of $20 pieces of crack cocaine.  Rivera-Cotto
        said that the crack cocaine user would usually knock on the outside of the
        window and UCC would go let the user in the door.  The UCC would bring the
        user back to apartment #16 where the crack cocaine sales were made.
        Officers asked Rivera-Cotto how many times he had sold crack cocaine and
        Rivera-Cotto initially said that he had only sold crack cocaine 2-3 times in the

12

last two weeks.  Officers challenged Rivera-Cotto on this story and he then
told officers he had sold crack cocaine approximately 50 times the past couple
of weeks.  Rivera-Cotto stated that he made 2-3 crack cocaine sales on
January 16, 2008. Officers  asked Rivera-Cotto where he got the crack
cocaine from.  Rivera-Cotto stated he was afraid to tell officers who the
supplier was because he feared that if he told them, that the supplier would kill
him and/or his family.  Rivera-Cotto ultimately told officers that the supplier of
the crack cocaine was "Cecil" (the DEFENDANT) from Kansas City who drives
a Jeep-type vehicle.  Rivera-Cotto said that "Cecil" would "front" about $1,000
worth of crack cocaine at a time to UCC.

Rivera-Cotto stated the he knew that "Cecil" was also supplying Mark
(Roberson) in apartment #38 with crack cocaine.  Rivera-Cotto stated that
Mark is know as "Blue."

3. **Forfeiture of Assets**.  Defendant knowingly and voluntarily consents to entry of
the money judgment in the amount of $30,515.00.  Defendant knowingly and
voluntarily waives all constitutional, legal and equitable defenses to the entry of
the money judgment in any proceeding.  Defendant further agrees that he will
truthfully and accurately complete a financial disclosure form prior to signing this
agreement and will list all his assets and financial interests.  Defendant freely,
voluntarily, knowingly and intelligently waives any right to collaterally attack any
matter in connection with this prosecution and sentence, including the entry of the
money judgment.

4. **Proposed (c)(1)(C) Sentence.**  The parties propose, as an appropriate
disposition of these cases, a sentence of 216 months in prison.  The parties

13

propose this sentence be imposed by the Court as follows:  that the defendant be
sentenced to 216 months in prison on Count 1, ten years of supervised release,
no fine and the mandatory special assessment of $100 to be paid during the
defendant's incarceration.

The parties seek this binding plea agreement as an appropriate disposition of
the case because it brings certainty to the sentencing process and assures that
the defendant and the government will benefit from the bargain they have struck if
the Court permits itself to be bound by the proposed sentence; the interests of
justice are served by the sentence, thereby assuring that the sentence is
consistent with the sentencing factors of 18 U.S.C. § 3553(a); and if the Court
does not agree with the sentence, the parties may be restored to the positions
they maintained prior to reaching this plea agreement.  This agreement centers
on the defendant's agreement to enter his guilty plea as soon as the Court's
schedule permits, thereby preserving valuable Court, prosecution, public
defender, probation office, U.S. Marshals Service and other law enforcement
resources.

5.      **Application of the Sentencing Guidelines.**  The parties are of the belief
that the proposed sentence does not offend the now advisory sentencing
guidelines, but because this proposed sentence is sought pursuant to Fed. R.
Crim. P. 11(c)(1)(C), the parties are not requesting imposition of an advisory
guideline sentence.

6. **Government's Additional Agreement**.      In return for the defendant's plea of

14

guilty as set forth herein, the United States Attorney for the District of Kansas also agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the Third Superseding Indictment.

7.      **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.**  The Court has no obligation to accept the proposed plea agreement and sentence.  It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

8.  **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.**   On the other hand, if the Court agrees to be bound by proposed plea agreement and accepts the defendant's plea of guilty, the defendant will not be permitted to withdraw it.  Only if the Court rejects the proposed plea agreement will the defendant be permitted to withdraw his guilty plea.

9.  **Payment of Special Assessment.**   The defendant understands that mandatory special assessment fee of $100 will be entered against the defendant at the time of sentencing.   The parties acknowledge the defendant is without adequate resources to pay the special assessment fee at the time of sentencing and agree to recommend that the Court order payment to occur during the defendant's period of incarceration.

10.     **Defendant's Agreements**.    The defendant agrees to entry of the money judgement to and cooperate fully and truthfully with the United States as follows:

1. Provide all information concerning his knowledge of, and participation in, the offenses charged in the Third Superseding Indictment and all related conduct;

2. If the United States determines the defendant has not provided full and truthful cooperation, or he has committed any local, state, or federal crime between the date of this plea agreement and his sentencing, or he has otherwise violated any other provision of this plea agreement, then the plea agreement may be voided and he will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, perjury, obstruction of justice, and any substantive offenses arising from this investigation.  Such prosecution may be based upon any information provided by him during the course of his cooperation, or upon leads derived therefrom, and this information may be used as evidence against the defendant.  In addition, his previously entered plea of guilty will remain in effect and cannot be withdrawn;

3. Fully and completely assist the United States in the identification and recovery of forfeitable assets, either domestic or foreign, that were acquired directly or indirectly through the unlawful activities of the defendant, co-defendants, and/or coconspirators.  He also agrees to not contest any forfeiture proceedings, whether administrative, civil, criminal, or ancillary to a criminal case.

11.   **Waiver of Appeal and Collateral Attack.**    If the Court agrees to the proposed plea agreement, the defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence.  The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed.  By

16

entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court.  The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2), and a motion brought under Fed. Rule of Civ. Pro. 60(b).   In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.  However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a).

12.    **Waiver of FOIA Request.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, Title 5, U.S.C. § 552, or the Privacy Act of 1974, Title 5, U.S.C. § 552a.

13.    **Full Disclosure by United States.**        The defendant understands the United States will provide to the court and the United States Probation Office all

17

information it deems relevant to determining the appropriate sentence in this case. This may include information concerning the background, character, and conduct of the defendant including the entirety of the defendant's criminal activities. The defendant understands these disclosures are not limited to the count to which the defendant has pled guilty. The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the court and the United States Probation Office.

14. **Parties to the Agreement.** The defendant understands this plea agreement binds only the defendant and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

15. **No Other Agreements.** The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's counsel. Further, the defendant acknowledges that he has had the plea agreement read to him, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further

18

understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties.  The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily.


Tristram W. Hunt
Assistant U.S. Attorney
500 State Avenue, Suite 360
Kansas City, Kansas, 66101
(913) 551-6730
(913) 551-6541
Kan. Sup. Ct. No. 18196

Date: 2. 9. 09


Scott Rask
Criminal Supervisor

Date: 2-9-09


Marietta Parker
Acting United States Attorney
District of Kansas

Date: Feb. 9, 2009


Cecil A. Brooks
Defendant

Date: 2/12/09

19

Date: 2/1~/0?

John O'Connor
4740 Grand Avenue, Suite 300
Kansas City, MO, 64112
Fax: 816-531-2372
e-mail: joconnor@wcllp.com

Date: 3/1?/09

P.J. O'Connor
Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO, 64112
Fax: 816-531-2372
e-mail: pjconnor@wcllp.com

Attorneys for Defendant Cecil A. Brooks